IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBRA ANN WRIGHT )
)
v. ) No. 3:10-0636
)
MICHAEL J. ASTRUE, )
    Commissioner of Social Security )

To: The Honorable John T. Nixon, Senior District Judge

**REPORT AND RECOMMENDATION**

The plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff could perform her past job as a small parts assembler (tr. 21) during the relevant time period is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the record (Docket Entry No. 12) should be denied.

**I. INTRODUCTION**

The plaintiff filed applications for DIB and SSI on November 15, 2007, alleging a disability onset date of October 21, 2007, due to fracturing her left ankle. (Tr. 108-15.) Her applications were

denied initially and upon reconsideration. (Tr. 58-60, 66-67.) A hearing before Administrative Law Judge ("ALJ") Linda J. Helm was held on August 24, 2009.[1] (Tr. 23-55.) The ALJ issued an unfavorable decision on September 8, 2009 (tr. 8-22), and the plaintiff sought review by the Appeals Council. (Tr. 6-7.) On April 30, 2010, the Appeals Council denied the plaintiff's request for review (tr. 1-5), and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on September 2, 1961, and was 46 years old as of October 21, 2007, her alleged onset date. (Tr. 56.) She has an eleventh grade education and worked as a parts assembler, welder, hand packager, and box maker. (Tr. 29-31, 48.)

### A. Chronological Background: Procedural Developments and Medical Records

On October 17, 2007, the plaintiff presented to the emergency room at University Medical Center and x-rays indicated that she had an acute non-displaced fracture of the left fibular shaft.[2] The plaintiff's ankle was put in a splint and she was prescribed acetaminophen/oxycodone.[2] (Tr. 186.)

---

[1] The plaintiff filed a second application for SSI on May 29, 2009, alleging an onset date of January 1, 2007. (Tr. 116-18.) Referring to her May 2009 SSI application as a May 2008 application, the ALJ explained that it was "escalated to the hearing level," although apparently no action on that application had been taken prior to the hearing. (Tr. 25.)

[2] The fibula is "the outer and smaller of the two bones of the leg, which articulates proximally with the tibia and distally is joined to the tibia in a syndesmosis." Dorland's Illustrated Medical Dictionary 698 (30th ed. 2003) ("Dorland's").

[2] Acetaminophen/Oxycodone is a narcotic analgesic. Saunders Pharmaceutical Word Book (2009) ("Saunders").

On December 5, 2007, Dr. David Luck, a family practitioner, ordered a second x-ray of her ankle because swelling persisted.(Tr. 196, 272.) The second x-ray revealed a "persistent minimally displaced fracture [of the] distal left fibula with generalized soft tissue swelling and possible slight widening of the tibiofibular distal syndesmosis present."[3] (Tr. 196.) The x-ray also showed "calcaneal spurring[4] present and arthritic changes at the tibiotalar joint."[5] *Id.*

On December 10, 2007, upon referral from Dr. Luck, Dr. John W. Bacon examined the plaintiff, recast the plaintiff's ankle, and released her to return to full work duty on December 28, 2007. (Tr. 193-95.) On January 3, 2008, the plaintiff returned to Dr. Luck with complaints of left ankle pain and he found that she could not stand more than four hours at a time and was "unable to work," prescribed Lortab,[6] and referred her to Star Physical Therapy ("Star"). (Tr. 198, 269.) On January 9, 2008, the plaintiff presented to Star with complaints of ankle and foot pain that was eight out of ten and she reported "difficulty and/or inability with the following functional activities: ascending stairs, descending stairs, general cleaning, lower body dressing, mopping/sweeping/vacuuming, prolonged standing, recreational activities, rising from a seated position, sleeping, walking for community distances and walking on variable surfaces."(Tr. 199-

---

[3] Tibiofibular syndemosis is "a firm fibrous union formed at the distal ends of the tibia and fibula between the fibular notch of the tibia and the roughened triangular surface of the fibula, which frequently contains a synovial prolongation of the cavity of the talocrural articulation." Dorland's at 1808.

[4] Calcaneal spurring is "bone excresence" on the lower surface of the calcaneus which frequently causes pain when walking. Dorland's at 1746.

[5] The tibiotalar joint is commonly known as the ankle joint. Orthopedia, "Tibiotalar Joint," http://www.orthopaedia.com/display/Main /The+tibiotalar+joint+Surface+Anatomy.

[6] Lortab is a pain reliever with the generic name of hydrocodone. Saunders at 415.

200.) The plaintiff returned to Star on January 10, 2008, and reported "no significant change" in her pain. (Tr. 204.)

Between January 14, 2008, to January 30, 2008, the plaintiff presented to Star on several occasions and her pain level was seven or eight out of ten. (Tr. 206-18.) She reported "non-compliance with HEP [Home Exercise Plan]" because she "stays 'on the go' all the time," that the cold weather exacerbated her pain, that "she went dancing . . . to try and loosen up [her] foot," that she continued to have difficulty with "lower body dressing, ascending/descending stairs, walking on uneven surfaces, general cleaning, [and] sleeping and rising from a seated position," that she was "getting used to her pain and that it doesn't hardly bother her anymore," and that she stopped taking her pain medication. (Tr. 206-16.) Upon discharge from Star, although the plaintiff had made "slight improvements in her ROM [range of motion]," she still had significant amounts of pain and difficulty performing functional activities. (Tr. 217.)

On January 31, 2008, the plaintiff presented to Dr. Luck with complaints of left ankle pain and he found that she had left ankle swelling as a result of her left ankle fracture. (Tr. 268.) On February 12, 2008, Dr. James Moore, a Tennessee Disability Determination Services ("DDS") non-examining consultative physician, evaluated the plaintiff and concluded that her "impairment[s] [are] severe now but will improve to non-severe within 12 months." (Tr. 219.) The plaintiff returned to Dr. Luck on February 26, 2008, again complaining of left ankle pain and he opined that there was a possibility that she needed surgery to alleviate the pain from her left ankle fracture. (Tr. 267.) Between March and July of 2008, Dr. Luck examined the plaintiff on multiple occasions, diagnosed her with left ankle pain and a left fibula fracture, and prescribed Lortab. (Tr. 261-66.) April 5, 2008, x-rays of the plaintiff's left ankle revealed soft tissue swelling, a spiral fracture of the distal fibula,

and calcaneal spurs. (Tr. 299.) On April 11, 2008, Dr. Roy Terry performed an "[o]pen reduction and internal fixation" on the plaintiff's left ankle. (Tr. 238). At follow-up appointments with Dr. Terry, he found that she had "a little bit of swelling" five weeks after surgery and occasional sharp pain, but that she was doing "better" and "progressed a little quicker than [he] initially wanted her to." (Tr. 235-37.) Dr. Terry noted that although the plaintiff had chronic swelling, the nonunion of the left fibula "appeared to have healed." (Tr. 290.)

On April 18, 2008, Dr. Luck completed a Medical Source Statement for Social Security Disability ("Medical Source Statement") and found that the plaintiff was unable to work, could not stand during a workday, and could only sit for four hours at a time and eight hours during a workday. (Tr. 347.) Dr. Luck opined that the plaintiff could lift ten pounds regularly, twenty pounds occasionally, and was unable to bend or stoop. (Tr. 347.) He also noted that the plaintiff would need to elevate her leg most of the time during an eight hour workday and that she would have to miss at least four or more days of work a month because of her impairment. (Tr. 348.) On April 22, 2008, DDS consultative physician, Dr. James Gregory, concluded that plaintiff's impairments are "severe now but will improve to non-severe within twelve months." (Tr. 231.) Between March and July of 2008, Dr. Luck examined the plaintiff on multiple occasions, diagnosed her with left ankle pain and a left fibula fracture, and prescribed Lortab. (Tr. 261-66.)

On August 25, 2008, on referral from Dr. Luck, Dr. Charles Kaelin, an orthopedist with Tennessee Sports Medicine and Orthopaedics, examined the plaintiff and found that she "indeed" had a nonunion of the left distal fibula and prescribed treatment with a bone stimulator. (Tr. 332.)

Dr. Kaelin also noted that the unltrasound was negative for deep vein thrombosis ("DVT").[7] *Id.* On October 17, 2008, the plaintiff presented to Dr. Luck and he diagnosed her with left ankle pain and prescribed Lortab. (Tr. 260.) On December 12, 2008, the plaintiff returned to Dr. Luck and he diagnosed her with left ankle pain, insomnia, and depression and prescribed Lortab, Lyrica,[8] and Celexa.[9] (Tr. 259.) He also noted that she could not work because she was unable to stand. *Id.* On January 13, 2009, the plaintiff returned to Dr. Luck with complaints of back pain and he diagnosed her with lumbar and ankle pain and prescribed Celexa and Lyrica. (Tr. 258).

A January 14, 2009, CT-scan of the plaintiff's left ankle and left foot revealed a "chronic or prior deltoid ligament injury," "[p]rominent plantar calcaneal and Achilles spurs indicative of prominent inflammation," and osteoarthritis. (Tr. 284-85.) On February 12, 2009, the plaintiff presented to Dr. Luck and reported that her back pain was "90% better" but that she still had ankle pain. (Tr. 257.) Dr. Luck diagnosed her with ankle pain and neuropathy and prescribed Lortab. *Id.* On April 14, 2009, Dr. Andrew Brian Thompson performed arthroscopic surgery on the plaintiff's left ankle, including scar tissue debridement and removal of screws from a previous surgery. (Tr. 249.) On May 12, 2009, Dr. Luck examined the plaintiff, diagnosed her with ankle pain, and noted that the plaintiff was still unable to stand or walk for extended periods of time.[10] (Tr. 256-57.)

---

[7] DVT is thrombosis of one or more of the deep veins of the lower limb, characterized by swelling, warmth, and erythema, frequently a precursor of pulmonary embolism. Dorland's at 1907.

[8] Lyrica is an anticonvulsant and prescribed for generalized anxiety disorders. Saunders at 420.

[9] Celexa is a selective serotonin reuptake inhibitor prescribed for major depression and is also used to treat obsessive-compulsive disorder, post-traumatic stress disorder, generalized anxiety disorder, and premenstrual dysphoric disorder. Saunders at 142.

[10] Although Dr. Luck indicated that the plaintiff was attending physical therapy sessions, the record does not contain treatment notes from those sessions in 2009.

On March 12, 2009, the plaintiff presented to Volunteer Behavioral Health Care System ("VBHCS") because she was "stressed out." (Tr. 338.) She was diagnosed with a generalized anxiety disorder, left ankle and shoulder arthritis, and chronic pain; assigned a Global Assessment of Functioning ("GAF") score of 55;[11] and prescribed Imipramine,[12] Xanax,[13] Celexa, and Neurontin.[14] (Tr. 341). On May 7, 2009 the plaintiff returned to VBHCS with complaints of being depressed and she reported that "[h]er activity is limited because of her ankle" but that "she still mows the yard." (Tr. 342.) She was diagnosed with generalized anxiety disorder, left ankle and shoulder arthritis, and chronic pain; assigned a GAF score of 55; and prescribed Celexa, Xanax, and Neurontin. (Tr. 343.)

**B. Hearing Testimony**

The hearing before the ALJ was held by teleconference, with the plaintiff and her non-attorney representative appearing at one location and the ALJ and Leslie A. Gillespie, a vocational expert ("VE"), at another location. (Tr. 23-55.) The plaintiff testified that she has an eleventh grade education, that she uses a cane, and that she injured her ankle on October 21, 2007, while working for Wise Staffing Services as a toy car assembler. (Tr. 29-32.) The plaintiff related that she also

---

[11] The GAF scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 43 (4th ed. 2000) ("DSM-IV-TR"). A GAF score within the range of 51-60 means that the plaintiff has "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." *Id.*

[12] Imipramine is a tricyclic antidepressant. Saunders at 364.

[13] Xanax is a sedative that is used to treat panic disorders and agoraphobia. Saunders at 768.

[14] Neurontin is an anticonvulsant for partial-onset seizures. Saunders at 488.

worked at Campbell Hausfield for ten years assembling pressure washers and paint sprayers, until she injured her shoulder, and at Saltech assembling car parts but she was fired for not having a GED. (Tr. 32-33.) The plaintiff testified that she received unemployment benefits for a year to a year and a half from the second quarter of 2008, and, although she had represented that she was able to work, she did not believe that she could work. (Tr. 35-36.)

The plaintiff testified that she injured her ankle after stepping off of a steep sidewalk in the dark (tr. 41) and she explained that her ankle hurts when she stands and walks, that the pain causes her sleeplessness, that she ices it three times a day, and that she tries to keep it elevated for most of the day. (Tr. 36-37, 44.) The plaintiff related that she is able to prepare simple meals but, although she had reported to VBHCS six months earlier that she was able to mow her yard, she testified that she was no longer able to do so. (Tr. 38-39.) She reported that she was receiving mental health treatment for anxiety and depression. (Tr. 40.) She also related that she has frequent ankle pain, that her pain is a seven out of ten, that she is able to carry about ten pounds, that she could stand for one hour in an eight hour workday, and that she experiences swelling but no pain in her ankle when she is sitting with her "feet planted on the ground." (Tr. 42-46.)

The VE, consistent with the Dictionary of Occupational Titles, classified the plaintiff's past relevant work as an assembler as medium and semiskilled, as small parts assembler as light and unskilled, as a hand packager as medium and unskilled, and as a box maker as medium and unskilled. (Tr. 48.) The ALJ asked the VE to determine what type of work the plaintiff could perform if she could lift/carry 20 pounds occasionally and ten pounds frequently, could stand/walk for no more than 15 minutes at a time and no more than two hours total in an eight hour workday, had no sitting restrictions, had "to avoid jobs that would require complex or detailed instructions"

and unprotected heights, and could only occasionally bend, stoop, kneel, crawl, climb, and crouch. (Tr.49.) The VE answered that the plaintiff could return to her past work as a small products assembler and also work as an office helper, mail clerk, and electrical accessories assembler. (Tr. 49-51.) The VE also determined that the plaintiff would be precluded from working if she had to elevate her leg three times a day for fifteen minutes each time or if she had to miss four days or more of work per month. (Tr. 53-54.)

### III. THE ALJ'S FINDINGS

1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2) The claimant has not engaged in substantial gainful activity since October 21, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq*).

\*\*\*

3) The claimant has the following severe impairments: status post left ankle distal fibula fracture; anxiety (20 CFR 404.1520(c) and 416.920(c)).

\*\*\*

4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; standing and walking is limited to intervals of no more than 15 minutes at a time and no more than a total of 2

       hours in an 8-hour workday; no restrictions on the ability to sit; claimant is limited from complex or detailed instructions; claimant is restricted from exposure to unprotected heights; claimant is limited to occasional bending, stooping, kneeling, crawling, or crouching.

                                         ***

6)       The claimant is capable of performing past relevant work as a small products assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

                                         ***

7)       The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-21.)

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Jones* v. *Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th

Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2008); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a "severe impairment." A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant

work, or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See, e.g., Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner to meet his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the plaintiff can perform, she is not disabled.[15] *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); *Her*, 203 F.3d at 391. *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris*

---

[15] This latter factor is considered regardless of whether such work exists in the immediate area in which the plaintiff lives or whether a specific job vacancy exists or whether the plaintiff would be hired if she applied. *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir. 1970).

*v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five Step Inquiry

In this case, the ALJ resolved the plaintiff's case at step four of the five-step process. (Tr. 15.) At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since October 21, 2007, the alleged onset date of disability. (Tr. 13.) At step two, the ALJ determined that the plaintiff's status post left ankle distal fibula fracture and anxiety were severe impairments. *Id.* At step three, the ALJ determined that the plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14.) At step four, the ALJ determined that the plaintiff has the residual functional capacity to perform less than the full range of light work (tr. 15) and could perform her past relevant work as a small products assembler. (Tr. 21.)

### C. The Plaintiff's Assertions of Error

The plaintiff contends that the ALJ erred in determining that the plaintiff's impairments did not meet Listing 1.06 and in "reject[ing]" the findings of her treating physician. Docket Entry No. 13, at 6-14.

**1. The ALJ correctly determined that the plaintiff did not meet or equal Listing 1.06.**

The plaintiff argues that the nonunion of her fractured left fibula satisfies the criteria of Listing 1.06. Docket Entry No. 13, at 6-7. As noted in *Little v. Astrue*, "'the burden of proof lies with the [plaintiff] at steps one through four of the [sequential disability benefits analysis],' including proving presumptive disability by meeting or exceeding a Medical Listing at step three." 2008 WL 3849937, at *4 (E.D.Ky. Aug. 15, 2008) (quoting *Her*, 203 F.3d at 391). Thus, the plaintiff "'bears the burden of proof at Step Three to demonstrate that she has or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.'" *Little*, 2008 WL 3849937, at *4 (quoting *Arnold v. Comm'r of Soc. Sec.*, 238 F.2d 419, 2000 WL 1909386, at *2 (6th Cir. Dec. 27, 2000)). The plaintiff's impairment must meet all of the listing's specified medical criteria and "[a]n impairment that meets only some of the criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). *See also Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). At Step Three,

> [i]f the [plaintiff] is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and [her] impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

*Little*, 2008 WL 3849937, at *1. If the plaintiff demonstrates that her impairment meets or equals a listed impairment, then the ALJ "'must find the [plaintiff] disabled.'" *Little*, 2008 WL 3849937, at *4 (quoting *Buress v. Sec'y of Health and Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)).

Listing 1.06 provides that the plaintiff will be found disabled if she has a "[f]racture of the femur, tibia, pelvis, or one or more of the tarsal bones" with

A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
and
B. Inability to ambulate effectively, as defined in 1.00B2b,[16] and return to effective ambulation did not occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06. As the ALJ explained, the record medical evidence does not clearly indicate that the plaintiff has a nonunion with her left fibula fracture. (Tr. 14.) On June 5, 2008, Dr. Terry noted that the nonunion of the plaintiff's left distal fibula "appeared to have healed." (Tr. 335.) On August 21, 2008, Dr. Kaelin found that he could not determine whether the plaintiff's distal fibula fracture had "achieved union or not." (Tr. 333.) On August 25, 2008, Dr. Kaelin concluded that the plaintiff "does, indeed, have a nonunion of the distal fibula." (Tr. 332.) In a September 3, 2008, letter Dr. Kaelin noted that x-rays of the plaintiff's left fibula indicated a nonunion fracture. (Tr. 334.) On October 24, 2008, Dr. Kaelin opined that x-rays indicated that it

---

[16] The Regulations define the "[i]nability to ambulate effectively" as:
extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1)-(2) (internal citations omitted).

"look[ed] like we may be getting some union in that nonunion." (Tr. 331.) On November 14, 2008, Dr. Charles Cox, who reviewed the plaintiff's x-rays from October 24, 2008, opined that although "[i]t is possible that she has a persistent nonunion [] I do not see it on the radiographs." (Tr. 330.) In sum, the record medical evidence is unclear as to whether a nonunion existed for twelve months after her alleged onset date.

Regardless, however, Listing 1.06 is clearly inapplicable because it only addresses fractures of the "femur, tibia, pelvis, or one or more of the tarsal bones" and not a fracture of the fibula.

### 2. The ALJ properly assessed the medical opinions of the plaintiff's treating physician.

The plaintiff contends that the ALJ erred by "rejecting" Dr. Luck's Medical Source Statement. Docket Entry No. 13, at 7-14. Given the regularity with which Dr. Luck examined the plaintiff (tr. 223-30, 252-97), he is classified as a treating source under 20 C.F.R. §§ 404.1502 and 416.902.[17] Treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone." 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2). Generally, an ALJ is required to give "controlling weight" to the

---

[17] A treating source, defined by 20 C.F.R. § 416.902, is
your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

medical opinion of a treating physician, as compared to the medical opinion of a non-treating physician, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* (quoted in *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. Aug. 31, 2010) and *Hensley v. Astrue*, 573 F.3d 263 (6th Cir.2009)). This is commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ did not assign controlling weight to Dr. Luck's Medical Source Statement. (Tr. 20.) As the plaintiff correctly points out, even if a treating source's medical opinion is not given controlling weight, it is "still entitled to deference and *must be weighed using all of the factors provided in 20 C.F.R. 404.1527 . . . .*" *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. Nov. 9, 2007) (quoting Soc. Sec Rul. 96-2p, 1996 WL 374188, at *4) (emphasis in original). The ALJ must consider

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

*McGrew v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 26, 30 (6th Cir. Aug. 19, 2009) (citing *Wilson*, 378 F.3d at 544); *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. Aug. 8, 2006) (quoting 20 C.F.R. § 404.1527(d)(2)-(6)). The ALJ must also provide "good reasons" for the resulting weight given to the treating source. Soc. Sec Rul. 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. § 404.1527(d)(2)); *Brock v. Comm'r of Soc. Sec.*, 2010 WL 784907, at *2 (6th Cir. Mar. 8, 2010). The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," Soc. Sec Rul. 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. § 404.1527(d)(2)), and so that the plaintiff understands the disposition of her case. *Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Although the ALJ focused on the factor of inconsistency in determining that Dr. Luck's Medical Source Statement should not be afforded any weight, she assigned "great weight" to Dr. Luck's January 3, 2008, treatment note. (Tr. 20.) The ALJ explained that Dr. Luck's Medical Source Statement

> was evaluated as medical opinion evidence from a treating source. However, this opinion evidence is contradicted by notations in the doctor's own office records. Office records had indicated the claimant was unable to stand for greater than 4 hours at a time, grossly inconsistent with the limitations assessed in the medical source statement. Furthermore, the severity of restrictions in the medical source statement is inconsistent with the objective evidence of improvement in the [plaintiff's] condition including range of motion and strength. Therefore, the medical source statement was not afforded any weight, but the assessed restrictions to standing for no more than four hours at a time was well supported by the medical evidence of record and afforded great weight, which is notably consistent with the residual capacity as well as defined above.

(Tr. 20.) (Internal citations to the record omitted.) Dr. Luck noted in his April 18, 2008, Medical Source Statement that the plaintiff was unable to stand during a workday, but three months earlier on January 3, 2008, he concluded that the plaintiff could stand up to four hours at a time. (Tr. 269, 347.) On May 15, 2008, nearly a month after Dr. Luck completed his Medical Source Statement, Dr. Terry, an orthopedic surgeon who performed left ankle surgery on the plaintiff on April 11, 2008, noted that the plaintiff "was doing better" and that "[s]he is active and wanted to get up on this." (Tr. 235.) Further, Dr. Moore and Dr. Gregory, both DDS consultative physicians, evaluated the plaintiff in 2008 and concluded that her "impairment[s] are severe now but will improve to non-severe within 12 months." (Tr. 219, 231.) Finally, the plaintiff reported to Star in January of 2008

that "she went dancing . . . to try and loosen up [her] foot" (tr. 208) and although she testified in August of 2009, that she was no longer able to mow the yard, she reported to VBHCS in May of 2009, that she was able to mow her lawn. (Tr. 342.)

Dr. Luck's finding that the plaintiff was precluded from standing during a workday is not supported by his own treatment notes, the record medical evidence, or the plaintiff's own testimony. Therefore, the ALJ did not err in assigning no weight to Dr. Luck's Medical Source Statement. She focused on the factor of inconsistency, provided "good reasons," as required by SSR 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. §§ 404.1527(d)(2)), and there is substantial evidence in the record to support his determination.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 12 ) be DENIED and that this action be DISMISSED.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge