IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBRA ANN WRIGHT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 3:10-cv-0636 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Griffin |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| *Defendant*. ) | |

### ORDER

Pending before the Court is Plaintiff Debra Ann Wright's ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 12) with supporting Brief (Doc. No. 13). Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner") filed a Response to Plaintiff's Motion (Doc. No. 14), to which Plaintiff filed a Reply (Doc. No. 15). Magistrate Judge Griffin issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 16.) Plaintiff filed Objections to the Report. (Doc. No. 17.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety, **DENIES** Plaintiff's Motion, and **AFFIRMS** the decision of the Commissioner.

**I. BACKGROUND**

*A. Procedural Background*

Plaintiff filed an application for disability insurance benefits and supplemental security income benefits with the Social Security Administration ("SSA") on November 15, 2007,

1

alleging a disability onset date of October 21, 2007, due to fracturing her left ankle. (Tr. 108-115.)  Plaintiff's application was denied initially (Tr. 58-60), and also upon reconsideration (Tr. 66-67).

Administrative Law Judge ("ALJ") George L. Evans, III, presided at a hearing on August 24, 2009. (Tr. 23-55.) On September 8, 2010, the ALJ issued an unfavorable decision. (Tr. 8-22.) Specifically, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
2. The claimant has not engaged in substantial gainful activity since October 21, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
   . . .
3. The claimant has the following severe impairments: status post left ankle distal fibula fracture; anxiety (20 C.F.R. 404.1520(c) and 416.920(c)).
   . . .
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
   . . .
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; standing and walking is limited to intervals of no more than 15 minutes at a time and no more than a total of 2 hours in an 8-hour workday; no restrictions on the ability to sit; claimant is limited from complex or detailed instructions; claimant is restricted from exposure to unprotected heights; claimant is limited to occasional bending, stooping, kneeling, crawling, or crouching.
   . . .
6. The claimant is capable of performing past relevant work as a small products assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).
   . . .
7. The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2007, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. 8-22.)

Plaintiff sought review by the Appeals Council (Tr. 6-7), and on April 30, 2010, the Appeals Council denied her request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-5). On July 1, 2010, Plaintiff filed this action to obtain judicial review of the ALJ's final decision. (Doc. No. 1.) The Court has jurisdiction under 42 U.S.C. § 405(g). Plaintiff filed a Motion for Judgment on the Administrative Record on October 27, 2010 (Doc. No. 12) with a supporting Brief (Doc. No. 13). Defendant filed a Response to Plaintiff's Motion on November 23, 2010 (Doc. No. 14), to which Plaintiff filed a Reply on December 3, 2010 (Doc. No. 15). On June 23, 2011, Magistrate Judge Griffin recommended the ALJ's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 16.) Plaintiff asserts two objections to the Magistrate Judge's recommended findings. (Doc. No. 17.) Specifically, Plaintiff objects to:

(1) The recommended finding the ALJ's consideration of Listing 1.06 was adequate.
(2) The recommended finding the ALJ gave good reasons to reject the opinion of a treating source.

*Id.* The Court discusses the merits of Plaintiff's objections below.

### B. Factual Background

The Court adopts the Background section of the Magistrate Judge's Report addressing the relevant facts of the record (Doc. No. 16 at 2-9).

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing

court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

    A. *Plaintiff objects to the Magistrate Judge's recommended finding that the ALJ's consideration of Listing 1.06 was adequate.*

Plaintiff asserts that the nonunion of her fractured left fibula satisfies the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.06, and that the Magistrate Judge erred in finding that the ALJ correctly determined that Plaintiff's ailment did not satisfy this Listing.

4

(Doc. No. 17 at 1.)  Specifically, Plaintiff claims that her October 2007 ankle injury involved fractures of both the tibia and the fibula, and that the Report only "focuse[d] on the fracture of the fibula," therefore failing to recognize that the "ALJ's discussion of Listing 1.06 misconstrues the evidence" in the case record.  (*Id.* at 1-2.)

To warrant a finding of disability, a claimant's affliction must meet or equal a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Therefore, Plaintiff must meet or equal the requirements of Listing 1.06, which addresses lower-limb musculoskeletal impairments.  Listing 1.06 requires a showing that Plaintiff suffers from a

> Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.  With:
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
> and
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06.

Plaintiff alleges that she suffered a fracture of her tibia along with a fracture of her fibula, thereby satisfying the requirements of the Listing.  (Doc. No. 17 at 1-2.)  Indeed, the record shows that Plaintiff suffered a "small nondisplaced fracture of the posterior tibia."  (Tr. 310.)  However, Listing 1.06 requires a fracture of the tibia *with* a nonunion.  A nonunion is defined as a "failure of the ends of a fractured bone to unite."  Dorland's Illustrated Medical Dictionary 1150 (28th ed. 1994).  The Court construes the language of the Listing as requiring that the nonunion be a consequence of, and not distinct from, a fracture of one of the listed bones.  In other words, the Listing covers a fracture of the femur, tibia, pelvis, or tarsal bones, with the clinical finding that a solid union *of that fracture* is not evident.  *See Hayes v. Astrue*, No. 10-CV-178, 2011 WL 901013, at *4 (S.D. Ohio Feb. 14, 2011), *adopted*, No. 10-CV-178, 2011 WL

901006 (S.D. Ohio Mar. 15, 2011) (referring specifically to the nonunion of the plaintiff's left femur, a listed bone, in determining that part of the definition Listing 1.06 was satisfied).

The medical record indicates that Plaintiff never complained of, nor was diagnosed with, a nonunion of her tibia fracture, and was only treated for the fracture and possible nonunion of her fibula. As such, the Report correctly found that "Listing 1.06 is clearly inapplicable because it only addresses fractures of the 'femur, tibia, pelvis, or one or more of the tarsal bones' and not a fracture of the fibula." (Doc. No. 16 at 17.) The ALJ similarly determined that the evidence "fails to support [that] the claimant's condition satisfies the paragraph A criteria." (Tr. 14.) The Court therefore finds substantial evidence in the record that the ALJ's consideration of Listing 1.06 was adequate, in that the ALJ determined that the Listing was not satisfied by Plaintiff's ailment, and the Report did not err in recommending this finding.

Additionally, even assuming *arguendo* that the Report had determined that a fracture of the tibia with potential nonunion of the fibula satisfied the preliminary requirements of the Listing, the Magistrate Judge correctly found that "the record medical evidence is unclear as to whether a nonunion existed for twelve months after [Plaintiff's] alleged onset date" (Doc. No. 16 at 17). Because Plaintiff's treating physicians "were all initially unaware of serious complications which eventually required arthroscopic surgery where the tibia and fibula join at the ankle," Plaintiff contends that "[t]his case does not involve resolution of conflicting opinions." (Doc. No. 17 at 2.) The Court disagrees. Upon review of the record, the Court finds the medical evidence to be inconclusive as to existence of a nonunion evident on appropriate medically acceptable imaging over the course of Plaintiff's injury. Throughout the course of Plaintiff's treatment, including the months prior to and following her surgery on April 11, 2008, her treating physicians could not determine consistently that a solid union was not present, and

the Magistrate Judge documented these discrepancies in her Report. (Doc. No. 16 at 16-17.) In weighing the medical evidence, the Report compared the various opinions of Plaintiff's multiple treating physicians as to the existence or nonexistence of a nonunion of Plaintiff's fractured fibula, and demonstrated that a conflict did indeed exist (*id.*), much as the ALJ had noted (Tr. 14). Accordingly, in light of the record, the Court finds that the Report correctly concluded that the ALJ properly considered, and rejected, Plaintiff's claims under Listing 1.06. Plaintiff's objection on these grounds is denied.

> B. *Plaintiff objects to the Magistrate Judge's recommended finding that the ALJ gave good reasons for rejecting the opinion of Dr. Luck, a treating source.*

Plaintiff asserts that "the finding of the U.S. Magistrate Judge that the ALJ gave good reasons to reject the treating source was erroneous." (Doc. No. 17 at 1.) Specifically, Plaintiff contends that the Magistrate Judge incorrectly determined that the ALJ provided a sufficient basis for rejecting the opinion of Dr. Luck, Plaintiff's treating physician. (*Id.* at 2.) In her Motion for Judgment on the Administrative Record, Plaintiff argues that the ALJ improperly rejected Dr. Luck's April 18, 2008 medical source statement ("Statement") (Tr. 347-48) and that the ALJ did not provide an adequate rationale for doing so. (Doc. No. 13 at 9-10.)

In evaluating the medical evidence in support of a disability claim, an ALJ must adhere to several governing standards. Chief among these standards is the greater deference generally afforded to the opinions of treating physicians as opposed to non-treating physicians, commonly known as the treating physician rule. Where a treating physician's opinion on "the nature and severity of [a plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it will be given controlling weight. 20 C.F.R. § 404.1527(d)(2). Whether a treating physician's assessment is inconsistent with the other substantial evidence of the medical

record "is a factual determination within [the ALJ's] discretion under § 404.1527(d)(2)." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). The ALJ declined to accord Dr. Luck's Statement controlling weight, finding that it was "contradicted by notations in the doctor's own office records . . . [and that] the severity of the restrictions in the [Statement] is inconsistent with the objective evidence of improvement in the claimant's condition" contained within the record. (Tr. 20.)

Where the treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight to accord that opinion, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions with regard to the record as a whole; and the specialization of the physician. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). There is a rebuttable presumption that the opinion of a treating physician is entitled to great deference. SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). Should an ALJ decide to accord less than great weight to a treating physician's opinion, she must provide "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at *5. Requiring an ALJ to articulate these good reasons serves a dual purpose:

> First, the explanation "let[s] claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."

8

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544).

After determining that Dr. Luck's Statement was not entitled to controlling weight, the ALJ focused on the inconsistency of the physician's conclusions with his own office notes and "the objective evidence of improvement in the claimant's condition" in the record. (Tr. 20.) The opinions of a treating physician are generally entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *Rogers*, 486 F.3d at 242. However, "the more consistent an opinion is with the record as a whole, the more weight [the SSA] will give to that opinion." 20 C.F.R. § 404.1527(d)(4). The ALJ concluded that Dr. Luck's Statement is inconsistent with his own treatment notes and the record as a whole, and declined to accord it any weight. (Tr. 20.)

In his April 18, 2008 Statement, Dr. Luck found that Plaintiff was unable to perform substantially any standing or walking, and was unable to perform even sedentary work. (Tr. 347-48.) This is notably inconsistent with Dr. Luck's own office notes of just three months prior, when, on January 3, he concluded that Plaintiff was unable to stand for *more than* four hours at a time. (Tr. 269.) Furthermore, Plaintiff's ankle surgeon, Dr. Terry, noted a month after Dr. Luck wrote his Statement that Plaintiff was doing better, was able to walk in a brace, and was "weight bearing almost 100% for at least 7-10 days." (Tr. 235.) Finally, two Disability Determination Services consultative physicians completed evaluations of Plaintiff's condition in February and April of 2008, and found that while her impairment qualified as severe, it "would improve to non-severe within 12 months." (Tr. 219, 231.) Dr. Luck's Statement, which imposed almost complete restrictions on Plaintiff's mobility and work potential, is clearly inconsistent with the medical evidence of record, including Dr. Luck's own prior examinations. The Court therefore

9

finds substantial evidence for the ALJ's decision to disregard Dr. Luck's Statement based on its inconsistency with his own treatment notes and the record as a whole.  Importantly, the ALJ also concluded that Dr. Luck's examination notes of January 3, 2008 were *not* inconsistent with his treatment records or the record as a whole, and accorded that treating source opinion great weight.  (Tr. 20)

When an ALJ rejects the opinion of a treating physician on the grounds that it is "inconsistent with the other substantial evidence in [the] record," the ALJ has stated an adequate reason for giving that opinion limited weight.  *Smith*, 482 F.3d at 877.  Because the ALJ determined that Dr. Luck's Statement was inconsistent with the other substantial evidence contained in the medical record – including his own treatment notes – and discussed the evidence with which it conflicted, the ALJ articulated good reasons for declining to afford controlling or great weight to that Statement.  Therefore, the Magistrate Judge did not err in finding substantial evidence to support the ALJ's decision not to extend controlling weight to Dr. Luck's Statement.  Accordingly, Plaintiff's objection on these grounds is denied.

## IV.    CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report in its entirety.  Plaintiff's Motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

It is so ORDERED.

Entered this the _____8th_____ day of August, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT